# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

NORMA OROZCO,

    Plaintiff,

v.                                                                                 Case No. 08-0600 BB-CG

SELRICO SERVICES INC,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Selrico Services Inc.'s ("Selrico") Motion for Summary Judgment (Doc. 19). For the reasons set forth below, Selrico's motion is granted.

### Factual and Procedural Background

This suit arises from Selrico's March 2007 termination of Plaintiff Norma Orozco. Ms. Orozco, who had worked for the company since January 2007, alleges that her firing was the result of employment discrimination and retaliation. Specifically, she contends that Selrico's adverse action was due to her Hispanic ethnicity. She asserts claims under both Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the New Mexico Human Rights Act ("NMHRA"), NMSA § 28-1 *et seq*.

Selrico is a Texas-based company that subcontracted to provide food services to members of the National Guard deployed near Deming, NM. In moving for summary judgment, Selrico hastens to point out that it is minority owned, with both a Hispanic President and Vice President. (Doc. 20, Exh. 1). Approximately 35% of the employees at the Deming facility where Ms. Orozco worked were Hispanic. *Id.* At all relevant times, the project manager at the Deming

1

facility—also the person who recommended Ms. Orozco's hiring, served as her immediate supervisor, and, less than three months later, recommended her dismissal—was Derrick "Duke" Ellington, an African-American. *Id.*

In late 2006, Ms. Orozco interviewed for a position providing clerical support to Mr. Ellington.[1]  *Id.*  The next month, on Mr. Ellington's recommendation, Ms. Orozco was hired. *Id.* As part of her employment, Ms. Orozco signed the Selrico Employee Certification of Work Rules and Standards, which stated, *inter alia*, that any acts of dishonesty would result in her immediate discharge. *Id.* The Certification further specified that the first 90 days of Ms. Orozco's employment would constitute a "probationary period." (Doc. 20, Exh. 1A).

Ms. Orozco's employment was short-lived.  She was terminated on March 22, 2007, only 81 days after her first day of work.  (Doc. 20, Exh. I).  According to Ms. Orozco, the trouble began after Mr. Ellington received a reprimand for the Deming facility's late submission of payroll information to the main office.[2]  Ms. Orozco contends that, after Mr. Ellington gave her a

---

[1] Where, as here, Ms. Orozco has not disputed Selrico's statement—either explicitly or in substance—that fact has been admitted.  *See* D.N.M.L.R. 56.1(b) ("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.").

[2] Selrico asserts that the trouble began shortly after Ms. Orozco started work.  It claims that her clerical skills, including her preparation of written work, were "seriously deficient," that she missed deadlines, and that she departed from a normal work schedule by coming in late and leaving early.  Evidence submitted by Selrico, in the form of emails and "Grievance Letters" written by Ms. Orozco, lends credence to its purported concerns about Ms. Orozco's clerical ability.  Ms. Orozco's inattentive use of English draws into question her ability to prepare written work adequate for an administrative assistant to the project manager. *See, e.g.,* Doc. 20, Exh. L (all errors appear in original):

> hi my name is norma and im a secreatery for the sub contractor with selrico in deming i started my job with this contractor in jan 1 2007 and i was told that i was a secretary and i would get 10.00 hour pay two week in to my work the pay change to 8.98 dollor then in feb,  i had a convesation with  my boss andy plolon about my

written reprimand regarding the late submission—her first of three written reprimands in March 2007[3]—his attitude toward her changed, in that "when [she] would ask Derrick Ellington a question, he would sometimes roll his eyes or make twisted faces." (Doc. 20, Exh. 3).

Later that month, Ms. Orozco became concerned that she was being underpaid. As part of her clerical duties at Selrico, Ms. Orozco had access to information concerning both the pay rate and job description of every employee at the Deming facility. On March 16, Ms. Orozco emailed Mr. Ellington and other Selrico employees requesting a written job description. Though nothing in her emails suggested concerns of discrimination—she stated that she was requesting a job description so that she could do her job better—Ms. Orozco now states that she had learned that two non-Hispanic, management-level employees were being paid at higher rates than her. (*Compare* Doc. 20, Exh. 1D *to* Doc. 23.) Ms. Orozco believed that she was doing work that was

---

pay and other issues we had at the bass and he replied that my nice jackie get fired which she is a bowhead employee or i get fired and he replied that he didnt like jackie attitude and thats why he didnt like her so i told him that that didnt pertain to me and that i didnt take threats seriously if he wanted to termant me that was fine but to do it becuse i wasnt doing my job i also told him that i needed a job discription of my job duties and he said that duke would give me one and on the contract it stated that all employee must have a job discription with in a certon amount of time and i have been here almost 4 months and i still cannot get a job discrtption of my job yet selrico says im adminastaration and all admit. get payed 12.60hour and i still get 8.98 and i still do interviews and payroll and invoices and other admint.stuff what im asking is if you have any way that i can stop the verbal herassment from this selrico place because if i don't do the papper workt hey ask for i get treating e-mails that there gonna repamn me for stuff that i had no idea that my boss had some pappers to do and i get little notice that they needed to be done when he just sits on the stuff he needs to do and still i get threats your help if possabe i can be reached at [redacted] or [redacted] cell thank you norma orozco

[3] At the time of her termination, Ms. Orozco submitted two separate "Grievance Letters" regarding two of the March reprimands. Neither letter alleged any sort of discrimination.

3

"very similar to them" but was being paid "significantly less than they were."[4] (Doc. 20, Exh. 5). No one responded to Ms. Orozco's email with a written job description.[5]

Throughout the first half of March 2007, Mr. Ellington and Selrico's Human Resource Manager, Linda Reed, engaged in frequent discussions regarding Ms. Orozco's job performance. In mid-March, Mr. Ellington recommended that Selrico fire Ms. Orozco before her 90-day probationary period ended. On March 19, Ms. Reed replied via email that terminating Ms. Orozco during the probationary period was unnecessary so long as Selrico had "the discipline process in the works before that date." (Doc. 20, Exh. 6). Unbeknownst to either Mr. Ellington or Ms. Reed at the time, Ms. Orozco had access to Mr. Ellington's email and was aware of the March 19 email discussing her termination.

On March 20, Ms. Orozco called in sick. She did so again on March 21, and, on that same day, gave Selrico a doctor's note stating that she would be unable to come into work for several days. Both parties agree that the doctor's note, as originally written, excused Ms. Orozco from work until March 26. The parties also agree that, at some point, someone altered the note to excuse Ms. Orozco from work until March 28. Selrico contends that Ms. Orozco changed the date on the doctor's note and that, upon discovering the alteration, Selrico terminated Ms. Orozco for a violation of the honesty provision of the Selrico Work Rules and Standards. Specifically, according to Selrico, Ms. Orozco was fired on March 22 for "falsification of time and company

---

[4] Following Ms. Orozco's termination, Selrico determined that Ms. Orozco had been underpaid by $556.81. In August 2007, Selrico sent Ms. Orozco a check for that amount.

[5] Though it is of no particular moment, Mr. Ellington has submitted sworn affidavit testimony that he had provided Ms. Orozco with copies of her written job description in early January and again in February. (Doc. 20, Exh. 2)

records, theft and any other act of dishonesty (date changed on return to work notice) and falsification of employment records." (Doc. 20, Exh. 1-I).

In her summary judgment response, Ms. Orozco does not dispute that she altered the doctor's note. Instead, she states that her termination was in retaliation for her request to be paid the same amount as non-Hispanic managerial employees and was the result of an anti-Hispanic attitude that "permeated" the workplace. With regard to the latter, Ms. Orozco points to an alleged incident in which she advised Mr. Ellington of a coworker's statement that a Hispanic worker who was unable to speak, read, or write English had "no right to work" at Selrico. Ms. Orozco alleges that, in response to her concerns, Mr. Ellington "rolled his eyes" and told her that he would "fix the problem." Ms. Orozco is unaware of what action, if any, Mr. Ellington took with regard to the incident.

In asserting her claims, Ms. Orozco admits that she does not know if she was terminated because she is Hispanic. (Doc. 20. Exh. 3). She claims, instead, that she was discriminated against after she "brought up the fact that she was being paid significantly less than Anglo co-workers" and after she asked for a job description. *Id.* Specifically, Ms. Orozco alleges that Mr. Ellington began to "pile on additional duties that were never described to [her] as part of [her] job originally" and that he "began to be critical of everything that [she] did." (Doc. 23, Exh. 1). Other than dating it to the day of her request for a job description, Ms. Orozco does not specify when the alleged discrimination began.

**Standard for Summary Judgment**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing Selrico's motion, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). As the movant, Selrico bears the burden of showing that no genuine disputes over material fact exist. *See Adams v. American Guarantee and Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). If Selrico meets its burden, Ms. Orozco, as nonmovant, may only escape summary judgment if she is able to identify evidence that would enable a trier-of-fact to find in her favor. *See id.*

**Analysis**

Ms. Orozco's Complaint purports to assert five claims. The last of these, a claim for punitive damages, need not be addressed here because there is no independent cause of action for punitive damages under New Mexico or federal law. *See, e.g., Gonzales v. Sansoy,* 703 P.2d 904, 906 (N.M.App. 1984); *Byrne v. Nezhat,* 261 F.3d 1075, 1096 (11th Cir. 2001). The remaining four claims can be grouped into pairs: a pair of claims alleging discrimination under the NMHRA and Title VII, Counts I and II respectively, and a pair of claims alleging retaliation under the NMHRA and Title VII, Counts III and IV respectively. Because application of the NMHRA tracks federal jurisprudence applying Title VII, *see Gonzales v. New Mexico. Department of Health*, 11 P.3d 550, 557 (N.M. 2000), the Court analyzes all of Ms. Orozco's claims under the Title VII framework.

*Discrimination*

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, the Court's basic inquiry is whether the defendant intentionally discriminated against the plaintiff because of the plaintiff's protected-class characteristic(s). *See, e.g., Jones v. Denver*, 203 F.3d 748, 752 (10th Cir. 2000).

There are two ways that a plaintiff can prevail in a Title VII discrimination claim. First, if she can show that discriminatory animus played a motivating part in the employment decision, she can proceed under a mixed-motive theory. *See, e.g., Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008) (discussing mixed-motive theory in the context of a retaliation claim); *see also generally Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (analyzing mixed-motive-theory-based discrimination claim). Plaintiffs proceeding under a mixed-motive theory must produce either (1) direct evidence or (2) circumstantial evidence that is "directly tied to the unlawful motive" in supporting their claim. *See Fye,* 516 F.3d at 1225. If a plaintiff is able to make such a showing, the burden shifts to the defendant to show that such a decision would have been made absent a discriminatory motive.

Here, Ms. Orozco is unable to proceed under a mixed-motive theory because she has failed to show that any discriminatory animus existed at Selrico—let alone that such animus played a role in her termination. Ms. Orozco's most viable allegation of discriminatory animus concerns a non-decisionmaker's purported comment about a third-party's inability to speak

7

English.[6]  Generally, statements by a non-decisionmaker cannot be used to show that a decision was motived by discriminatory animus.  *See, e.g., McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998).  Moreover, Ms. Orozco was not the target of the comment, nor was she present when it was made.  Instead, Ms. Orozco was informed of the comment by a kitchen employee "because she speaks Spanish."  Ms. Orozco states that she informed Mr. Ellington of the comment, that he rolled his eyes, and that, at a later date, she was fired.  But Ms. Orozco produces no evidence to connect the alleged comment by a non-decisionmaker to her termination.  In truth, no such connection can be made.  *See Luciano v. Monfort, Inc.,* 259 F.3d 906, 909 (8th Cir. 2001).

Because she cannot proceed under a mixed-motive theory, Ms. Orozco must pursue the second option by attempting to satisfy the three-part *McDonnell Douglas* test.  Under *McDonnell Douglas*, a plaintiff is tasked with the "not onerous" burden of establishing a *prima facie* case.  *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Namely, by showing by a preponderance of evidence that: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also, e.g., Hysten v. Burlington Northern and Santa Fe Ry. Co.,* 296 F.3d 1177, 1181 (10th Cir. 2002).

"Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.  Once created, this

---

[6] As discussed below, Ms. Orozco's allegations regarding pay rate and Mr. Ellington's attitude, if true, do not appear to involve Ms. Orozco's ethnicity.

presumption can be rebutted by the defendant if it can produce evidence that the termination was based on a legitimate, nondiscriminatory reason. *McCowan v. All Star Maintenance, Inc.,* 273 F.3d 917, 922 (10th Cir. 2001). "The [defendant's] explanation provided must be legally sufficient to justify a judgment . . . [and] to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine, 450* at 255-56. If the defendant provides a sufficient explanation, the burden shifts back to the plaintiff who must then demonstrate that the defendant's proffered reason is merely a pretext. *Id.*

Ms. Orozco has not established a *prima facie* case of discrimination. Though it is undisputed that Ms. Orozco both belongs to a protected class and suffered an adverse employment action, she has failed to show that her termination took place under circumstances that would give rise to the inference of discrimination.

The overarching defect in Ms. Orozco's case is simply that she provides no grounds on which a factfinder could determine that she was ever discriminated against. In addition to the aforementioned comment—which was not directed at her—Ms. Orozco seeks to rely on a change in Mr. Ellington's post-reprimand attitude and the allegation that she was paid less than managerial-level employees in spite of having performed managerial-type duties.[7]

But none of those allegations, even if true, give rise to the inference of discrimination. If Mr. Ellington treated Ms. Orozco differently after receiving a reprimand for failures that he, correctly or not, attributed to her, the change in his attitude was presumably due to the reprimand

---

[7] That Selrico later determined that Ms. Orozco had been underpaid and issued a check for the underpayment has not, in the Court's judgment, been shown to be indicative of discrimination. The record indicates that Ms. Orozco was not similarly situated to the managerial-level employees to which she refers. It is undisputed that Ms. Orozco was paid less than managerial-level employees because she was employed in a clerical capacity.

9

itself.  Ms. Orozco has provided no evidence Mr. Ellington's change in attitude was due to Ms. Orozco's Hispanic ethnicity, which was a characteristic Ms. Orozco had both when Mr. Ellington hired her and immediately prior to the reprimand.  In fact, Ms. Orozco herself has testified that she does not know if she was terminated because of her Hispanic ethnicity.  (Doc. 20, Exh. 3).

Nor has Ms. Orozco shown that the pay discrepancies between her and the managerial-level employees were based on her ethnicity.  Although she alleges that she performed some of the same tasks as the managers, she has failed to show that she was similarly situated to them. *See, e.g., Mickelson v. New York Life Ins. Co.,* 460 F.3d 1304, 1311 (10th Cir. 2006).  For instance, Ms. Orozco has not shown that the tasks that she and the managers have in common comprise a significant aspect or percentage of the managers' job duties.  Further, she has neglected to explain why the purported overlap in her clerical-level duties and those of the managers would give rise to the inference of discrimination.  Ms. Orozco makes no attempt to address the possible differences in job description, seniority, performance, training, education, specialization, or promotion that could account for the disparity in her pay.  Instead, she simply alleges that she is paid less than two non-Hispanic managers with whom she shares some job duties—duties which are of unknown import in the managers' jobs—and, on that basis, asserts a claim for discrimination.  Our jurisprudence requires more.  *See, e.g., id.*

Even if Ms. Orozco could overcome these defects in her *prima facie* case she has done nothing to show that Selrico's proffered non-discriminatory reason for terminating her—namely that she violated the company's policy against dishonesty by altering a doctor's note to get more time off—is pretextual.  Plaintiffs may demonstrate pretext by providing: (1) evidence that the defendant's stated reason for the adverse employment action was false, (2) evidence that the

defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or (3) evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. *See Kendrick v. Penske Transp. Servs, Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000).

Ms. Orozco has done none of these. Instead, Ms. Orozco has argued that Selrico's allegations regarding her "performance deficiencies" were pretextual. But Ms. Orozco was not fired for her performance deficiencies. Instead, Selrico's proffered reason for terminating Ms. Orozco was that she violated the company's written dishonesty policy by submitting an altered doctor's note. (Doc. 23, Exh. I). Because Ms. Orozco's summary judgment pleadings fail to dispute either the allegation that she altered the note or the evidence that such a violation would be punished by termination under Selrico's written policy, *(see* Doc. 23, Exh. A), there is simply no basis on which a trier-of-fact could find that Selrico's proffered reason for terminating Ms. Orozco was a mere pretext.[8]

### *Retaliation*

Ms. Orozco fares no better with regard to retaliation. To succeed in her claim for retaliation, Ms. Orozco must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially

---

[8] Nor has Ms. Orozco disputed the strong inference that is created by the fact that Mr. Ellington was the person who had hired her only weeks earlier. *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) ("[W]here the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual.") (internal quotations omitted).

adverse action." *Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1218 (10th Cir. 2006).  She must satisfy these requirements in the summary judgment phase by making a *prima facie* showing.

As with discrimination claims, a plaintiff's establishment of a *prima facie* retaliation case causes the burden to shift to the defendant, who must then articulate a non-retaliatory reason for the employment action.  *See Piercy v. Maketa,* 480 F.3d 1192, 1198 (10th Cir. 2007).  If the defendant is able to do so, the plaintiff must then show that the defendant's proffered reason is pretextual.  *Id.*

Given the proximity in time between the purportedly protected activity and her termination, Ms. Orozco may be able to establish a *prima facie* claim for retaliation.  *See Trujillo v. PacifiCorp,* 524 F.3d 1149, 1157 n.5 (10th Cir. 2008) ("[I]n the context of retaliation claims, we have permitted plaintiffs to establish a prima facie case of discrimination by showing only close proximity in time between a protected activity and an adverse action.")  But exploring the nuances of Ms. Orozco's attempt to do so is unnecessary because, as shown above, she has not made any showing that Selrico's proffered reason for terminating her was pretextual.  Thus, even were she to succeed in establishing a *prima facie* case, Ms. Orozco's claim would fail because Selrico has offered a non-retaliatory reason for its action and Ms. Orozco has failed to dispute it. Accordingly, there is no need to determine if Ms. Orozco met the initial requirements of what is ultimately a doomed retaliation claim.

## Conclusion

Selrico has offered a non-discriminatory, non-retaliatory reason for terminating Ms. Orozco.  Because, even with all reasonable inferences drawn in the light most favorable to her,

Ms. Orozco cannot show that Selrico's proffered reason is pretextual, her discrimination and retaliation claims are clearly deficient. Accordingly, Selrico's motion for summary judgment is granted and Ms. Orozco's claims are dismissed with prejudice.

/s/ Bruce D. Black
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE